**JURY TRIAL DEMANDED**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOAN LINTON, SHARON LINTON, JAMES LINTON, FRANKLIN LINTON III, DIRK LINTON, DANIEL LINTON, CHRISTINA LYNN, JASON LINTON, and MICHELLE MESERAULL, as surviving heirs of FRANKLIN LINTON, JR., Deceased,<br><br>             Plaintiffs,<br><br>-vs.-<br><br>OWENS ILLINOIS, INC. (sued individually and as successor-in-interest to OWENS ILLIONIS GLASS COMPANY);<br>OWENS-BROCKWAY GLASS CONTAINER, INC. (successor-by-merger to OWENS-ILLINOIS, INC.),<br>AMERICAN GREASE STICK COMPANY, LP d/b/a AGS COMPANY;<br>CHEMTALL US, INC. f/k/a OAKITE PRODUCTS, INC.;<br>CHEVRON PHILLIPS CHEMICAL COMPANY, LLC, which does business in Missouri as CP CHEM COMPANY LLC;<br>CITGO PETROLEUM CORP;<br>HOMAX PRODUCTS, INC. (sued individually and successor-by-merger to JASCO CHEMICAL CORPORATION);<br>NCH CORPORATION f/k/a NATIONAL CHEMSEARCH CORPORATION (sued individually and as successor to SPECIALTY PRODUCTS COMPANY);<br>RADIATOR SPECIALTY COMPANY;<br>RECKITT BENCKISER LLC (sued individually and as successor-by-merger to RECKITT & COLEMAN, INC. successor-in-interest to | Case No. 4:12-cv-0960-AGF<br><br>Judge Audrey G. Fleissig |

1

| | |
|---|---|
| BOYLE MIDWAY HOUSEHOLD PRODUCTS formerly 3-IN-ONE OIL COMPANY); | ) ) ) |
| SHELL CHEMICAL LP s/b/m to SHELL CHEMICAL COMPANY; | ) ) |
| THE SHERWIN-WILLIAMS COMPANY d/b/a SHERWIN-WILLIAMS DIVERSIFIED BRANDS; | ) ) ) |
| THE STECO CORPORATION; | ) |
| TOTAL SPECIALTIES USA, INC. d/b/a TOTAL LUBRICANTS USA, INC.; | ) ) |
| WD-40 MANUFACTURING COMPANY (sued individually and d/b/a 3-IN-ONE OIL PRODUCTS); | ) ) ) |
| W.M. BARR COMPANY (sued individually and d/b/a JASCO PRODUCTS); | ) ) |
| WYETH, INC. f/k/a AMERICAN HOME PRODUCTS (sued individually and as successor-in-interest to 3-IN-ONE OIL COMPANY); | ) ) ) ) |
| XEROX CORPORATION; | ) |
| Defendants. | ) ) |

## PLAINTIFFS' SECOND AMENDED COMPLAINT

NOW COME Plaintiffs listed above, by their attorneys, GORI, JULIAN & ASSOCIATES, P.C., and for their cause of action against Defendants, state as follows:

## JURISDICTION, VENUE, AND GENERAL ALLEGATIONS

1. Plaintiffs, Joan Linton, Sharon Linton, James Linton, Franklin Linton III, Dirk Linton, Daniel Linton, Christina Lynn, Jason Linton, and Michelle Meseraull, as the surviving heirs of Franklin Linton, Jr., Deceased, are Class I beneficiaries of the Decedent and bring this action pursuant to Missouri Revised Statutes 537.080, et seq. That at all times concerned herein, Plaintiffs were the lawful wedded spouse and/or child and/or legally-adopted grandchild of the Decedent.

2

2. Each of the Plaintiffs currently resides in Missouri. Decedent first experienced symptoms and was diagnosed and treated in Missouri. Decedent resided in Missouri throughout the entirety of his illness and at the time of his death.

3. Decedent was first exposed to and inhaled and/or came into contact with benzene and/or benzene-containing products and/or other toxic substances that he worked with or around which were manufactured, sold and distributed by the Defendants and each of them. All or a substantial portion of the acts or omissions that form the basis for this lawsuit occurred in this County and therefore venue is proper pursuant to §508.040. Certain acts or omissions, which were a proximate or producing cause of Decedent's injuries and death occurred in Missouri. This Court has jurisdiction over this claim pursuant to §506.500 R S.MO.

4. The Decedent, FRANKLIN LINTON, JR., was a floor boy, mechanic, foreman and eventually plant manager employed by the Owens-Illinois Glass Company at its facility located in Oakland, California, from approximately 1957-1987. Decedent's job duties exposed him to various lubricants, oils and chemicals including, but are not limited to, Oakite, SS-25, Tellus, Kleenmold, Lock-Ease, and other aerosols, polymers, and petroleum, lubricating, and hydraulic oils.

5. Upon retirement from Owens-Illinois Glass Company in 1987, Decedent relocated to Macks Creek, Missouri and maintained 100 acres of farmland, exposing him to pesticides and other chemicals and lubricants necessary to general farm maintenance. Additionally, Decedent performed furniture restoration in his spare time. This process exposed him to chemicals, including, but not limited to, paint thinner, paint remover, and lacquer thinner.

6. On or about June 2009, Decedent first became aware that he developed Acute Myelogenous Leukemia (hereinafter "AML") and at a later date learned that said disease was wrongfully caused by benzene and/or benzene derivatives and/or other toxic substances. Decedent died of AML on or about April 13, 2010.

7. The below mentioned Defendants are jointly and severally liable in that they contributed to cause Decedent's injuries and death:

> Defendant, OWENS ILLINOIS, INC. (sued individually and as successor-in-interest to OWENS ILLIONIS GLASS COMPANY), is a Delaware corporation with its principal place of business in Ohio. Said corporation has been served and appeared herein.
>
> Defendant OWENS-BROCKWAY GLASS CONTAINER, INC. (successor-by-merger to OWENS-ILLINOIS, INC.), is a Delaware corporation with its principal place of business in Ohio. Said corporation has been served and appeared herein.
>
> Defendant, AMERICAN GREASE STICK COMPANY, LP d/b/a AGS COMPANY, is a Michigan limited partnership with its principal place of business in Michigan. Defendant may be served at its registered agent: I. Kurt Rosen, 2651 Hoyt Street, Muskegon Heights, MI 49444.
>
> Defendant, CHEMTALL US, INC. f/k/a OAKITE PRODUCTS, INC., is a Delaware corporation with its principal place of business in New Jersey. Defendant may be served at its registered agent: The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.
>
> Defendant, CHEVRON PHILLIPS CHEMICAL COMPANY, LLC, which does business in Missouri as CP CHEM COMPANY LLC, is a Delaware limited liability corporation with its principal place of business in Oklahoma. Defendant may be served through its registered agent: C. T. Corporation System, 120 S. Central Avenue, Clayton, MO 63105.
>
> Defendant, CITGO PETROLEUM CORPORATION, is a Delaware corporation with its principal place of business in Texas. Defendant may be served through its registered agent: C.T. Corporation System, 120 S. Central Avenue, Clayton, MO 63105.
>
> Defendant, HOMAX PRODUCTS, INC. (sued individually and successor-by-merger to JASCO CHEMICAL CORPORATION), is a Delaware corporation, with its

principal place of business in Washington.  Defendant may be served through its registered agent:  Corporation Service Company, 300 Deschutes Way, SW, Suite 304, Tumwater, WA 98501.

Defendant, NCH CORPORATION f/k/a NATIONAL CHEMSEARCH CORPORATION (sued individually and as successor to SPECIALTY PRODUCTS COMPANY), is a Delaware corporation with its principal place of business in Texas.  Defendant may be served through its registered agent:  C. T. Corporation System, 120 S. Central Avenue, Clayton, MO 63105.

Defendant, RADIATOR SPECIALTY COMPANY, is a North Carolina corporation with its principal place of business in North Carolina.  Defendant may be served through its registered agent:  Ronald M. Weiner, 600 Radiator Road, Indian Trail, NC 28079.

Defendant, RECKITT BENCKISER LLC (sued individually and as successor-by-merger to RECKITT & COLEMAN, INC. successor-in-interest to BOYLE MIDWAY HOUSEHOLD PRODUCTS formerly 3-IN-ONE OIL COMPANY), is a Delaware limited liability company with its principal place of business in New Jersey.  Defendant may be served at its registered agent:  CSC-Lawyers Incorporating Service Company, 221 Bolivar Street, Jefferson City, MO  65101.

Defendant, SHELL CHEMICAL LP s/b/m to SHELL CHEMICAL COMPANY, is a Delaware limited partnership with its principal place of business in Texas.  Defendant may be served pursuant at its registered agent:  The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE  19801.

Defendant, THE SHERWIN WILLIAMS COMPANY d/b/a SHERWIN WILLIAMS DIVERSIFIED BRANDS, is an Ohio corporation with its principal place of business in Ohio.  Defendant may be served at its registered agent: CSC-Lawyers Incorporating Service Company, 221 Bolivar, Jefferson City, MO  65101.

Defendant, THE STECO CORPORATION, is an Arkansas corporation with its principal place of business in Arkansas.  Defendant may be served at its registered agent:  Michael P. Smith, 2330 Cantrell Road, Little Rock, AR  72202.

Defendant, TOTAL SPECIALTIES USA, INC. d/b/a TOTAL LUBRICANTS USA, INC., is a Delaware corporation with its principal place of business in New Jersey.  Defendant may be served at its registered agent:  The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE  19801.

Defendant, WD-40 MANUFACTURING COMPANY (sued individually and d/b/a 3-IN-ONE OIL PRODUCTS), is a California corporation with its principal place of business in California.  Defendant may be served at its registered agent:  Maria M. Mitchell, 1061 Cudahy Place, San Diego, CA  92138.

Defendant, W.M. BARR COMPANY (sued individually and d/b/a JASCO PRODUCTS) is a Tennessee corporation with its principal place of business in Tennessee. Defendant may be served at its registered agent: Michael S. Cooley, 800 Centerview Parkway, Suite 400, Cordova, TN 38018.

Defendant, WYETH, INC. f/k/a AMERICAN HOME PRODUCTS (sued individually and as successor-in-interest to 3-IN-ONE OIL COMPANY), is a Delaware corporation with its principal place of business in New Jersey. Defendant may be served at its registered agent: CT Corporation System, 120 South Central Avenue, Clayton, MO 63105.

Defendant, XEROX CORPORATION, is a New York corporation with its principal place of business in Connecticut. Defendant may be served at: Xerox Corporation, Attn: General Counsel, 45 Glover Avenue, Norwalk, CT 06856.

## COUNT I

### EMPLOYERS' FRAUDULENT CONCEALMENT
### AGAINST DEFENDANTS OWENS-ILLINOIS, INC. AND
### OWENS-BROCKWAY GLASS CONTAINER, INC.)

1-7. Plaintiffs herein incorporate by reference paragraphs 1 through 7 of the General Allegations for paragraphs 1 through 6 of this Count I.

8. In 1957, Mr. Linton began working at the Owens Illinois Glass Plant ("glass plant") as a floor boy. Mr. Linton continued working at the glass plant for thirty years until he retired. During his years at the glass plant, Mr. Linton was continuously exposed and overexposed at work to chemical compounds containing carcinogens and co-carcinogens, including benzene.

9. Although Mr. Linton and his co-workers were being overexposed to hazardous chemicals, including benzene, the Employer Defendants failed to provide protective devices, other than eye goggles, or ventilation to prevent Mr. Linton's overexposure to these hazardous chemical compounds. From this continuous overexposure to these hazardous chemicals, Mr.

Linton developed skin rashes, lesions, and a pronounced discoloration of his skin that was not covered by his goggles or clothing.  Mr. Linton reported these issues to his supervisors.  Upon information and belief, Mr. Linton's co-workers complained to Employer Defendants about similar skin ailments and discoloration.  Moreover, these skin conditions were open and obvious to anyone observing Mr. Linton or his co-workers.  You could see the outline of Mr. Linton's goggles on his facial skin.

10. Mr. Linton's chronic overexposure to carcinogenic chemicals, including benzene, damaged the protective barrier of Mr. Linton's skin and allowed those hazardous chemicals to be directly absorbed into his body through his skin and lungs.  The Employer Defendants were aware that the chemical used by their employees, including benzene, could cause certain injuries, including skin irritations and reactions.  Employer Defendants were further aware that Mr. Linton and his co-workers experienced continuing skin problems because of their exposure to the chemicals used at the glass plant and that these skin problems suffered by Mr. Linton and his co-workers were a precursor to the development of specific types of cancer, including acute myeloid leukemia ("AML") which are caused by exposure to the hazardous chemicals used at the glass plant, including benzene.

11. Even though the Employer Defendants knew they were overexposing Mr. Linton to hazardous chemicals, the Employer Defendants never told Mr. Linton that he was being overexposed or that such overexposure could cause him serious bodily injury.  On information and belief, when employees like and including Mr. Linton asked the Employer Defendants whether the chemicals used at the glass plant were safe, they were told by the Employer Defendants that the process was safe and would not cause him harm.  However, Employer

Defendants knew they were overexposing Mr. Linton to carcinogens, including benzene, and they knew this overexposure would cause, more likely than not, bodily injury and damage to Mr. Linton. The Employer Defendants knew that Mr. Linton's skin rashes, lesions, and discoloration diminished the protective barrier of Mr. Linton skin and increased his exposure to these hazardous chemicals, including benzene. Moreover, the Employer Defendants knew that Mr. Linton's chronic overexposure to these hazardous chemicals, including benzene, could, more likely than not, cause Mr. Linton to develop cancer, including AML.

12. Employer Defendants were aware of the causal relationship between the breakdown of the dermal barrier and increased exposure to the hazardous chemicals used at the glass plant. Employer Defendants were further aware of the causal relationship between Mr. Linton's skin conditions and his ultimate development of AML, through overexposure to toxic chemicals, including benzene. The skin rashes, lesions, and discoloration were both work-related injuries and symptoms of the breakdown in Mr. Linton's dermal barrier. Yet, the Employer Defendants fraudulently concealed this knowledge from Mr. Linton when Mr. Linton and his co-workers asked if the chemicals used in the glass plant were safe.

13. The Employer Defendants further concealed from its employees the identity of the chemical compounds that were used during the glass manufacturing process and that these chemical compounds, including benzene, were carcinogens and/or co-carcinogens. The Employer Defendants never revealed that Mr. Linton was being overexposed to hazardous chemicals, including benzene, or that such overexposure was causing Mr. Linton's skin conditions. The Employer Defendants further hid that such overexposure could cause severe bodily injury, including AML, and the causal relationship between chemical exposures, the

development of skin conditions like Mr. Linton's and the ultimate contraction of cancer.

14. Employer Defendants' acts and omissions were done falsely and fraudulently with the intent to induce Mr. Linton to continue to work in a dangerous environment and without safeguards, protections, warnings, and proper medical care and procedures aimed at reducing the risk of exposure. Mr. Linton was ignorant of the chronic overexposure to toxic chemicals he was experiencing at the glass plant and was ignorant of the risks involved in such overexposure. If Mr. Linton had been aware of these risks, he would not have continued to work under such conditions.

15. The breakdown of Mr. Linton's dermal barrier, caused by his overexposure to hazardous chemicals at the glass plant and evidenced by his skin conditions, allowed toxins from the hazardous chemicals used at the glass plant to enter Mr. Linton's body. Exposure to these toxins, including benzene, was a substantial factor in Mr. Linton developing AML, which ultimately caused his death. The Employer Defendants' fraudulent concealment of Mr. Linton's initial injury and its connection with his employment at the glass plant aggravated Mr. Linton's condition such that Mr. Linton ultimately contracted AML and died. As such, Defendant Employers are liable as set out further below.

## COUNT II

### STRICT LIABILITY
### (AGAINST ALL DEFENDANTS EXCEPT OWENS-ILLINOIS, INC. AND OWENS-BROCKWAY GLASS CONTAINER, INC.)

1. - 7. Plaintiffs herein incorporate by reference Paragraphs 1 through 7 of the General Allegations for paragraphs 1 through 7 of this Count II.

8. At the time Defendants manufactured, sold and distributed the benzene and/or benzene-containing products and/or toxic substances to which Decedent was exposed, said products were in a defective condition and were unreasonably dangerous in that said products were not accompanied by any warnings or by adequate warnings advising of the danger of bodily harm or death resulting from exposure to benzene and/or toxic substances or of precautions to be employed in the use of benzene and/or benzene-containing products and/or toxic substances in order to avoid injury or death.

9. Said products were expected to reach and, in fact, did reach Decedent in substantially the same condition as when manufactured and/or distributed by Defendants.

10. At all times relevant hereto, said products were used in the manner and environment intended and in a manner reasonably foreseeable and anticipated by Defendants.

11. The benzene and products containing benzene manufactured, distributed, supplied, marketed and/or sold by the defendants were defective, unreasonably dangerous and not safe when put to a reasonably anticipated use when sold by defendants by reason of one or more of the following defects or conditions:

   (a) the defendants knew, or with the exercise of reasonable care, should have known that their products contained the hazardous carcinogenic chemical benzene as a product component and/or contaminant which were in a defective, unreasonably dangerous condition, and that use of their products would cause damage to the blood forming organs and cancer;

   (b) the defendants failed to warn Decedent of the known or reasonably foreseeable dangers of contracting cancer and other life threatening blood disorders from use of defendants' defective and unreasonably dangerous products;

   (c) the defendants knew, or it was reasonably foreseeable, that defendants' products containing the hazardous carcinogenic chemical benzene as a product component and/or contaminant would be used by users or consumers such as Decedent in the manner in which defendants' products were used;

(d) the defendants failed to provide Decedent with the knowledge of what would be reasonably safe and sufficient wearing apparel and proper protective equipment and appliances, if, in truth, there were any way to protect himself from defendants' defective and unreasonably dangerous products;

(e) the defendants failed to instruct Decedent in the proper handling of their products to protect himself from harm;

(f) the defendants failed to test defendants' products containing the hazardous carcinogenic chemical benzene as a product component and/or contaminant regarding the adverse health effects upon the human body caused by the defective and unreasonably dangerous condition of defendants' products containing the hazardous carcinogenic chemical benzene as a product component and/or contaminant; and

(g) the defendants failed to place a safer product into the stream of commerce which would have prevented Decedent's disease and ultimate death without impairing the product's utility, although a safer product was economically and technologically feasible at the time the product left the control of defendants.

12. As a direct and proximate result of said defective and unreasonably dangerous conditions of said products, Decedent inhaled and/or came into contact with great amounts of benzene and/or benzene-containing fumes and/or toxic substances causing Decedent to develop AML, which ultimately led to his death; Decedent, prior to his death, was compelled to expend and become liable for large sums of monies for hospital, medical and other health care services necessary for the treatment of his AML, including the medical monitoring of his AML; Decedent, prior to his death, experienced great physical pain and mental anguish as a result of his inhalation and/or contact with said benzene and/or benzene-containing products and/or toxic substances; as a further result of his AML, Decedent was hindered and prevented from pursuing his normal course of employment, thereby losing large sums of money which otherwise would have accrued to his estate; further, by reason of the death of the Decedent, his family has been

deprived of his support and has lost the society of the Decedent; lastly, substantial sums of money were expended by the Decedent's estate for funeral and burial expenses.

WHEREFORE, Plaintiffs pray judgment be entered against the Defendants jointly and severally for actual and compensatory damages as are fair and reasonable, in excess of TWENTY-FIVE THOUSAND ($25,000.00) DOLLARS, including the cost of this action and any other such relief as the court deems just and equitable.

### COUNT III

### NEGLIGENCE
### (AGAINST ALL DEFENDANTS EXCEPT OWENS-ILLINOIS, INC. AND OWENS-BROCKWAY GLASS CONTAINER, INC.)

1. -7.    Plaintiffs herein incorporate by reference Paragraphs 1 through 7 of the General Allegations for paragraphs 1 through 7 of this Count III.

8.    Defendants manufactured, distributed, marketed, and sold benzene and products containing benzene, a carcinogenic chemical that causes damage to the blood forming organs and cancer.

9.    At all times herein set forth, the products of Defendants were being employed in the manner and for the purposes for which they were intended.

10.    Defendants knew or should have known that the benzene and/or benzene-derivatives and/or toxic substances contained in their products had a toxic, poisonous, and highly deleterious effect upon the health of persons inhaling the fumes and coming into contact with the benzene and/or benzene-containing products and/or toxic substances.

11. At all times herein relevant, defendants had a duty to exercise reasonable care and caution for the safety of the Decedent and others working with or around the Defendants' benzene and/or benzene-containing products and/or toxic substances.

12. Defendants owed a duty of ordinary care to Decedent and breached that duty in one or more of the following respects:

   (a) by failing to provide an adequate warning and/or instruction with regard to benzene and products containing benzene;

   (b) by failing to perform testing of their benzene and products containing benzene to determine human health effects;

   (c) by failing to recommend the use of adequate personal protective equipment in handling or working with or around their benzene and products containing benzene;

   (d) by failing to conduct monitoring and/or testing of persons who handled and worked with their benzene and products containing benzene;

   (e) by failing to recommend adequate engineering controls to reduce or eliminate exposure of persons working with or around their benzene and products containing benzene;

   (f) by failing to place a safer product into the stream of commerce which would have prevented Decedent's disease without impairing the product's utility, although a safer product was economically and technologically feasible at the time the product left the control of defendants;

   (g) by failing to create and maintain data and records regarding health effects of exposure to benzene and products containing [benzene;

   (h) by failing to test, monitor and research the human health effects of exposure to benzene and products containing benzene; and

   (i) such other acts and/or omissions as may be shown proper at the time of trial.

13. As a direct and proximate result of said failure, Decedent inhaled and/or came into contact with great amounts of benzene and/or benzene-containing products and/or toxic

substances causing Decedent to develop AML, which ultimately led to his death; Decedent, prior to his death, was compelled to expend and become liable for large sums of monies for hospital, medical and other health care services necessary for the treatment of his AML, including the medical monitoring of his AML; Decedent, prior to his death, experienced great physical pain and mental anguish as a result of his inhalation and/or contact with said benzene and/or benzene-containing products and/or toxic substances; as a further result of his AML, Decedent was hindered and prevented from pursuing his normal course of employment, thereby losing large sums of money which otherwise would have accrued to his estate; further, by reason of the death of the Decedent, his family has been deprived of his support and has lost the society of the Decedent; lastly, substantial sums of money were expended by the Decedent's estate for funeral and burial expenses.

WHEREFORE, Plaintiffs pray judgment be entered against the Defendants jointly and severally for actual and compensatory damages as are fair and reasonable, in excess of TWENTY-FIVE THOUSAND ($25,000.00) DOLLARS, including the cost of this action and any other such relief as the court deems just and equitable.

### COUNT IV

**WILFUL AND WANTON MISCONDUCT**
**(AGAINST ALL DEFENDANTS EXCEPT OWENS-ILLINOIS, INC. AND OWENS-BROCKWAY GLASS CONTAINER, INC.)**

1. - 13. Plaintiffs herein incorporate by reference Paragraphs 1 through 13 of Count III for paragraphs 1 through 13 of this Count IV of this Petition.

14. Defendants are guilty of one or more of the following acts or omissions amounting to willful and wanton misconduct in that they:

      (a)      Intentionally or with a reckless disregard for the safety of the Decedent, failed to provide any or adequate warnings to persons working with or around the products of the dangers of inhaling or coming into contact with benzene and/or benzene-containing products and/or toxic substances; and/or

      (b)      Intentionally or with a reckless disregard for the safety of the Decedent, failed to provide any or adequate instructions concerning the safe methods of working with or around the products, including specific instructions on how to avoid inhaling and/or coming into contact with benzene and/or benzene-containing products and/or toxic substances.

15.    As a direct and proximate result of said acts or omissions, Decedent was exposed to, inhaled, and/or came into contact with great amounts of benzene and/or benzene-containing products and/or toxic substances causing Decedent to develop AML, which ultimately lead to his death; Decedent, prior to his death, was compelled to expend and become liable for large sums of monies for hospital, medical and other health care services necessary for the treatment of his AML, including the medical monitoring of his AML; Decedent, prior to his death, experienced great physical pain and mental anguish as a result of his inhalation and/or contact with said benzene and/or benzene-containing products and/or toxic substances; as a further result of his AML, Decedent was hindered and prevented from pursuing his normal course of employment, thereby losing large sums of money which otherwise would have accrued to his estate; further, by reason of the death of the Decedent, his family has been deprived of his support and has lost the society of the Decedent; lastly, substantial sums of money were expended by the Decedent's estate for funeral and burial expenses.

WHEREFORE, Plaintiffs pray that, in addition to actual and compensatory damages, Plaintiffs be awarded punitive and exemplary damages against the Defendants jointly and severally in an amount in excess of TWENTY-FIVE THOUSAND ($25,000.00) DOLLARS.

## COUNT V

## BREACH OF WARRANTIES
### (AGAINST ALL DEFENDANTS EXCEPT OWENS-ILLINOIS, INC. AND OWENS-BROCKWAY GLASS CONTAINER, INC.)

1. - 7.   Plaintiffs herein incorporate by reference Paragraphs 1 through 7 of the General Allegations IV for paragraphs 1 through 7 of this Count V of this Petition.

8.   The defendants distributed, marketed and sold benzene and products containing benzene in the course of their business.

9.   The benzene and products containing benzene distributed, marketed and sold by the defendants was in a defective condition, unreasonably dangerous and not fit for its ordinary and reasonably anticipated uses.

10.   Decedent purchased and was the ultimate consumer of defendants' benzene and products containing benzene.

11.   Decedent used the benzene and products containing benzene for one or more of its ordinary purposes and in a manner reasonably anticipated.

12.   The defendants expressly and impliedly warranted that their products would be safe to use in an ordinary, prudent and reasonably foreseeable manner such as Decedent's use.

13.   Decedent relied upon the defendants' express and implied warranties that their products were safe to use in an ordinary, prudent and reasonably foreseeable manner such as Decedent's use.

14.   The defendants breached their express and implied warranties to Decedent because their products were not safe when used in an ordinary, prudent and reasonably foreseeable manner as evidenced by Decedent's illness and death.

15. As a direct and proximate result of said acts or omissions, Decedent was exposed to, inhaled, and/or came into contact with great amounts of benzene and/or benzene-containing products and/or toxic substances causing Decedent to develop AML, which ultimately lead to his death; Decedent, prior to his death, was compelled to expend and become liable for large sums of monies for hospital, medical and other health care services necessary for the treatment of his AML, including the medical monitoring of his AML; Decedent, prior to his death, experienced great physical pain and mental anguish as a result of his inhalation and/or contact with said benzene and/or benzene-containing products and/or toxic substances; as a further result of his AML, Decedent was hindered and prevented from pursuing his normal course of employment, thereby losing large sums of money which otherwise would have accrued to his estate; further, by reason of the death of the Decedent, his family has been deprived of his support and has lost the society of the Decedent; lastly, substantial sums of money were expended by the Decedent's estate for funeral and burial expenses.

WHEREFORE, Plaintiffs pray that, in addition to actual and compensatory damages, Plaintiffs be awarded punitive and exemplary damages against the Defendants jointly and severally in an amount in excess of TWENTY-FIVE THOUSAND ($25,000.00) DOLLARS.

## COUNT VI

## LOSS OF CONSORTIUM

1. Plaintiffs incorporate by reference all paragraphs of Counts I – V as paragraph 1 of this Count VI.

2. At all relevant times, and particularly prior to Decedent's diagnosis with AML, Plaintiff Joan Linton was the wife of Decedent.

3. As a direct and proximate result of Defendants' conduct set forth in Counts I - V and the injury suffered by her husband, Plaintiff Joan Linton, has suffered interference with and impairment of their marital relationship and all those elements of married life Plaintiff Joan Linton was accustomed to receiving, including, but not limited to, support, devotion, care, society and consortium.

WHEREFORE, Plaintiffs pray judgment be entered against Defendants jointly and severally for actual and compensatory damages as are fair and reasonable, in excess of TWENTY-FIVE THOUSAND ($25,000.00) DOLLARS, including the cost of this action and any other such relief as the court deems just and equitable.

Dated: March 28, 2013    Respectfully submitted,

/s/ Amy M. Carter
Amy M. Carter
State Bar of Texas No. 24004580
SIMON GREENSTONE PANATIER BARTLETT
3232 McKinney Avenue, Suite 610
Dallas, Texas 75204
Tel: (214) 276-7680
Fax: (214) 276- 7699

Randy L. Gori, #47619
Barry Julian, #45962
GORI, JULIAN & ASSOCIATES, P.C.
156 N. Main St.
Edwardsville, IL  62025
(618) 659-9833
(618) 659-9834 (facsimile)

*ATTORNEYS FOR PLAINTIFFS*

**CERTIFICATE OF SERVICE**

I, Amy M. Carter, hereby certify that on the 28th day of March, 2013, *Plaintiffs' Second Amended Complaint* was filed with the Clerk of the Court using the CM/ECF system, which will send electronic notification to all parties who have appeared, and a courtesy copy was served upon all counsel of record via facsimile to the following:

/s/ Amy M. Carter_____
AMY M. CARTER

Randolph G. Willis
Rasmussen Willis Dickey & Moore, LLC
9200 Ward Parkway, Suite 400
Kansas City, MO 64114

Matthew J. Fischer
Edward Casmere
Brian O. Watson
Schiff & Hardin, LLP
233 S. Wacker Drive, Suite 6600
Chicago, IL 60606

*Counsel for Defendants Owens-Illinois, Inc.
and Owens-Brockway Glass Container Inc.*